Leonard H. Smith  (MT Bar #3445)
Mac Morris (MT Bar #130458)
CROWLEY FLECK PLLP
490 North 31st Street, Suite 500
P. O. Box 2529
Billings, MT 59103-2529
Telephone:  (406) 252-3441
Facsimile:  (406) 252-5292
lsmith@crowleyfleck.com
mmorris@crowleyfleck.com

Anita Y. Milanovich
General Counsel
OFFICE OF THE GOVERNOR
1301 E. 6th Ave.
Helena, MT  59601
Telephone:  (406) 444-5554
anita.milanovich@mt.gov

*Attorneys for Defendant Governor Greg Gianforte*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| IN RE:  CONDITIONS AT LAKE COUNTY JAIL | Cause No.:  CV 22-127-M-DWM<br><br>**DEFENDANT GOVERNOR GREG GIANFORTE'S BRIEF IN SUPPORT OF MOTION TO DISMISS** |

## <u>INTRODUCTION</u>

Defendant Governor Greg Gianforte moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal of all claims against him alleged in Plaintiffs' First Amended Class Action Complaint ("Complaint") for failure to

state a claim. Plaintiffs' claims against the Governor are limited to those alleged by putative class representatives Aloysius Black Crow, Marcus Azure, and Nethaniel Mad Plume ("Plaintiffs") on behalf of the putative "Tribal Member Subclass" in Counts 1 and 3. *See* Doc. 8, ¶¶ 40-41, 50-51, 54-57.

Governor Gianforte is immune from liability for Plaintiffs' claims under the Eleventh Amendment of the United States Constitution. Plaintiffs allege no facts to show that the Governor has any connection to the alleged illegal acts, nor do Plaintiffs allege any personal involvement by the Governor in any constitutional deprivation as required for § 1983 liability. Plaintiffs also fail to show the Governor can redress Plaintiffs' alleged injuries, except ostensibly by an outlay of State funds, an act controlled by the Montana Legislature and outside the Governor's authority. Plaintiffs rely solely on generalized allegations detached from the named Plaintiffs and the theory that the Governor's general duty to execute state laws makes him somehow liable for Plaintiffs' alleged constitutional deprivations.[1]  The Ninth Circuit and courts around the country repeatedly have rejected such a theory. For each of these reasons, Plaintiffs' claims against the Governor should be dismissed in accordance with Fed. R. Civ. P. 12(b)(6).

---

[1] Plaintiffs do not incorporate prior pleadings, but even if they had, such pleadings also lack any specificity. *See* CV-21-97-M-DWM, Doc. 13 (Black Crow Complaint); CV-22-4-M-DWM, Doc. 7 (Mad Plume Complaint); CV-22-30-M-DWM, Doc. 9 (Azure Complaint.)

Lake County's cross-claim against the Governor for contribution and/or indemnity likewise fails as a result of Eleventh Amendment immunity. Lake County's claim against the Governor is clearly one for money damages barred by the Eleventh Amendment. *See* Doc. 21, ¶¶ 6-7; Prayer, ¶ 4. Moreover, Lake County's theories of contribution and indemnity are legally deficient as a matter of law. Therefore, Lake County's cross-claim should also be dismissed.

Governor Gianforte respectfully requests the Court dismiss all claims against him and dismiss the Governor as a defendant in this matter.

## LEGAL STANDARD

Rule 8(a)(2), Fed. R. Civ. P., requires plaintiffs to include in their complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., tests the legal sufficiency of a complaint under the plausibility pleading standard of Rule 8(a)(2). *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate under Rule 12(b)(6) when the complaint fails to state a plausible claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

When a complaint "either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory" it should be dismissed under Rule 12(b)(6). *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013). A

complaint must contain sufficient factual matter to state a claim that is plausible on its face. *Id.* at 999 (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard requires "more than sheer possibility that defendant has acted unlawfully." *Id.*

"Conclusory allegations of law and unwarranted inferences are insufficient" to survive a Rule 12(b)(6) motion to dismiss. *Nat'l Assoc. for the Advancement of Psychoanalysis v. Calif. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (quotation omitted). "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citations omitted).

## ARGUMENT

I. **The Court should dismiss Counts 1 and 3 as alleged against the Governor because he is entitled to Eleventh Amendment immunity and because Plaintiffs lack standing to sue the Governor.**

The Governor is not a proper defendant in this case because no allegations of fact in Plaintiffs' Complaint show a causal connection between his duties and the injuries Plaintiffs allege related to the conditions or funding of the Lake County Jail. The only basis Plaintiffs cite for including the Governor as a defendant is his

general duty to enforce state law. *See* Doc. 8, ¶ 5. It is well established that a general duty to enforce state law is insufficient to avoid Eleventh Amendment immunity absent some direct connection to the alleged illegal conduct.

States are protected by the Eleventh Amendment from suits brought by individuals in federal court. *Douglas v. Cal. Dep't of Youth Auth.*, 674 F.3d 1128, 1133 (9th Cir. 2001). An exception under *Ex Parte Young*, 209 U.S. 123 (1908), allows citizens to sue state officials in their official capacities "for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Coal to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). But the exception has an important caveat: "In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, . . . such officer must have some connection with the enforcement of the act, or else it is merely . . . attempting to make the state a party." *Ex Parte Young*, 209 U.S. at 157.

This causal connection is what the Ninth Circuit described as the "common denominator" between the standing and sovereign immunity inquiries:

> Whether these officials are, in their official capacities, proper defendants in the suit is really the common denominator of two separate inquiries: first, whether there is the requisite causal connection between their responsibilities and any injury that the plaintiffs might suffer, such that relief against the defendants would provide redress (citing the Article III standing requirements of *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)); and second,

whether our jurisdiction over the defendants is proper under the doctrine of *Ex parte Young*, which requires 'some connection' between a named state officer and enforcement of a challenged state law.

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004) (citing *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992)). The connection must be direct. "[A] generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *Coal. to Defend Affirmative Action*, 674 F.3d at 1134.

Similarly, to state a plausible claim under 42 U.S.C. § 1983, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1192, 1194 (9th Cir. 1998). "Liability under section 1983 arises only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Wesley v. Davis,* 333 F.Supp.2d 888, 892 (C.D. Cal. 2004) (finding that a defendant's general responsibility for supervising prison operations is insufficient in establishing personal involvement).

Plaintiffs allege nothing of the sort. Plaintiffs merely allege in conclusory fashion that the Governor is liable due to unspecified "acts and omissions." *See* Doc. 8, ¶¶ 50 & 56. Plaintiffs do not allege that the Governor has any authority over the conditions or policies at Lake County Jail, played any personal role in

creating or prolonging those conditions or policies, or had any other connection to Plaintiffs' alleged injuries. The Governor does not oversee whether inmates have toiletries, overcrowding, screening, ventilation, access to hot water, fire safety, recreation policies, food portions, or any of the other conditions contained in Plaintiffs Complaint, and Plaintiffs do not allege that he does. *See* Doc. 8, ¶¶ 7-35.

Plaintiffs' attempt to connect the Governor through the State's assumption of criminal jurisdiction over the Flathead Indian Reservation by Public Law 280 is plainly insufficient. *See* Doc 8, ¶50 (Count I); *id.*, ¶ 56 (Count III). The Governor has no authority to enforce criminal law, assert criminal jurisdiction, or ensure that county jail conditions are appropriate under Public Law 280, and the only connection Plaintiffs assert is the Governor's general duty to "see that the laws are faithfully executed" under Mont. Const. art. IV, § 4. *Id.*, ¶ 5.

Courts have repeatedly held that governors are entitled to Eleventh Amendment immunity when the only connection to a plaintiffs' allegations is the general duty to enforce state law. *See Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (Governor Brown entitled to Eleventh Amendment immunity because his only connection to allegations "is his general duty to enforce California law."); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 714 F.2d 946, 953 (9th Cir. 1983) ("the Governor's general duty to enforce California law under the circumstances of this

case does not establish the requisite connection between him and the unconstitutional acts alleged by the NAACP."); *Nichols v. Brown*, 859 F.Supp.2d 1118, 1132 (same); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949-50 (11th Cir. 2003) ("governor's general executive power is insufficient" to maintain suit against him). Accordingly, the Court should dismiss Plaintiffs' Counts I and III as alleged against the Governor because he has no connection to the allegations beyond his general duty to enforce state law.

Additionally, Governor Gianforte has no responsibility to allocate funds to Lake County for the upkeep of the Lake County jail. After Congress enacted PL-280, the state of Montana enacted §§ 2-1-301 through 306, MCA. That enactment provides in relevant part as follows: "[T]he state shall reimburse Lake County for assuming criminal jurisdiction under this section annually **to the extent funds are appropriated by the legislature**." § 2-1-301(2), MCA (emphasis added). As Governor Gianforte is an officer of the executive branch, and not of the legislative branch, he plainly lacks any authority to appropriate funds to Lake County under PL-280. *See Meyer v. Knudsen*, 2022 MT 109, ¶ 12, 409 Mont. 19, 510 P.3d 1246 ("An appropriation … is something within the prerogative of the Legislature."). Plaintiffs' claims thus fail because the Governor has no authority to redress their alleged injuries.

Count Three fails for the additional reason that it constitutes a claim for money damages prohibited by the Eleventh Amendment. In Count Three, Plaintiffs seek redress for being charged for healthcare services at the Lake County Jail. (Doc. 8 at ¶ 48.) However, "[t]he Eleventh Amendment bars actions for damages against state officials who are sued in their official capacities in federal court." *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir. 1999). "That is so because … a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents." *Id.* at 1026 (*quoting Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *see also Confederated Tribes & Bands of Yakama Indian Nation v. Locke*, 176 F.3d 467, 469 (9th Cir. 1999) ("the Tribe's claim for damages against the governor in his official capacity is barred by the Eleventh Amendment because any such judgment would run against the State's treasury.").

Because Plaintiffs fail to assert <u>any facts</u> to establish that Governor Gianforte was personally involved in their alleged injuries, has any enforcement authority over the policies, conditions, or funding at the Lake County Jail, or any authority to redress Plaintiffs' alleged injuries, the Court should dismiss Plaintiffs' claims against the Governor.

## II.    The Court should dismiss Count III because Plaintiffs lack standing to enforce the Hellgate Treaty.

Plaintiffs lack standing to enforce the Hellgate Treaty of 1855 because treaty rights may only be asserted by the Tribe, not its individual members.[2] The "irreducible constitutional minimum of standing consists of three elements … [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (internal punctuation omitted) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)). Closely related to the constitutional standing requirement is the prudential requirement that a plaintiff "cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). This limitation serves an important function: it prevents "the adjudication of rights which those not before the Court may not wish to assert" and seeks to ensure "that the most effective advocate of the rights at issue is present to champion them."

---

[2] In 1855, the United States and what became known as the Confederated Salish and Kootenai Tribes ("Tribes") entered the Hellgate Treaty, 12 Stat. 975, creating the Flathead Indian Reservation. *Confederated Salish and Kootenai Tribes v. Jewell*, 2015 WL 12748309, at *1 (D.Mont. May 18, 2015).

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.,* 438 U.S. 59, 80 (1978).[3]

A treaty, by its very definition, "is 'essentially a contract between two sovereign nations,'" not between individuals. *Herrera v. Wyoming*, 587 U.S. ___, 139 S.Ct. 1686, 1699 (2019) (*citing Washington v. Wash. State Com. Passenger Fishing Vessel Assn.*, 443 U.S. 658, 675 (1979)). Accordingly, "[r]ights, enumerated under treaties, are reserved to communities or 'tribes' rather than to individuals." *United States v. State of Or.*, 787 F.Supp. 1557, 1566 (D.Or. 1992), *aff'd*, 29 F.3d 481 (9th Cir. 1994); *see also Bess v. Spitzer*, 459 F.Supp.2d 191, 196 (E.D.N.Y. 2006) (finding that "individual Indians lack standing to sue under the Treaty of Fort Albany of 1664 because that Treaty secures rights for 'tribes and bands of Indians' rather than individuals").

So it is in this case. Only the signatory Tribes can seek to enforce provisions of the Hellgate Treaty. *See United States v. Washington*, 641 F.2d 1368, 1372 (9th Cir. 1981) ("The appellants seek to exercise treaty rights as tribes. They may do so only if they are the tribes that signed the treaties."). The Hellgate Treaty, moreover, says nothing about the United States' obligation to provide "adequate and cost-free medical care" to individual tribal members. *Compare* Doc. 8, ¶ 54 *with* Hellgate

---

[3] Because it relates to Plaintiffs' status relevant to a contract, Plaintiffs' lack of standing for Count 3 is appropriately addressed through a Rule 12(b)(6) motion. *See Long v. Salt River Valley Water Users' Ass'n*, 820 F.2d 284, 288-89 (9th Cir. 1987)(analyzing a motion to dismiss under Rule 12(b)(6) and concluding that a plaintiff who is not a party to a contract lacks standing to enforce its terms); *Green v. Blickenstaff*, 2021 WL 6426141, at *1 (D.Mont. April 14, 2021)(granting motion to dismiss for lack of standing to make claims relating to a contract under Rule 12(b)(6)).

Treaty, 12 Stat. 975. For these reasons, Plaintiffs lack standing for claims based on enforcing the Hellgate Treaty, and Count 3 must be dismissed.

## III.    Plaintiffs fail to allege facts sufficient to state a plausible claim for relief.

Plaintiffs' Complaint is utterly devoid of specific facts related to the proposed class representatives Black Crow, Azure, and Mad Plume, the only Plaintiffs who allege claims against the Governor. *See* Doc. 8. As a result, Plaintiffs fail to state a plausible claim for relief against the Governor, even setting aside the problems identified in sections I & II above.

To satisfy Rule 8(a)(2), Plaintiffs must allege sufficient factual matter showing entitlement to relief against the Governor. *Iqbal*, 556 U.S. at 678. Plaintiffs, however, allege no facts about their specific individual circumstances. *See* Doc. 8. For instance, Plaintiffs do not allege whether they are currently in jail at Lake County, whether they are or were in jail for an offense covered by Public Law 280, whether their cells were crowded, whether they encountered insects, whether there were issues with their beds, whether they sought medical treatment or were charged for it, whether they sought to engage in Native American religious ceremonies and were denied the same, and/or whether they appropriately exhausted Lake County jail's grievance procedures, or even attempted to do so.

These pleading deficiencies are not mere technical deficiencies, but instead go to the heart of whether Plaintiffs are entitled to any relief for their claims. For

instance, if Plaintiffs are not currently in jail, they lack standing for declaratory or injunctive relief. *See e.g. City of Los Angeles v. Lyons*, 461 U.S. 95, 105-106 (1983). If Plaintiffs have not appropriately exhausted administrative remedies through Lake County's grievance procedures, their claims are barred by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 638 (2016). And unless Plaintiffs can personally meet the high standard for showing a constitutional deprivation as required to impose liability under 42 U.S.C § 1983, Plaintiffs' claims are subject to dismissal for failure to state a claim. *See e.g. Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018); *Toguchi v. Chung*, 391 F.3d 1051, 1056-57 (9th Cir. 2004). In short, Plaintiffs' Complaint falls woefully short of satisfying Rule 8's pleading standard. For this reason as well, all of Plaintiffs' claims against the Governor must be dismissed.

## IV.    The Governor is entitled to dismissal of Lake County's cross-claim for contribution and/or indemnity.

Under the Eleventh Amendment, a state is immune from suits for damages in federal court unless it has consented to suit or unless Congress has abrogated state immunity through its power to enforce the Fourteenth Amendment.  *College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999); *Cory v. White*, 457 U.S. 85, 90-91 (1982) (*citing Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).  The Eleventh Amendment bars a federal court from hearing claims against dependent instrumentalities of a state, and agents of states

acting within the course and scope of their official duties. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Cerrato v. San Francisco Com. College District*, 26 F.3d 968, 972 (9th Cir 1994).

The defendant Lake County has filed a cross-claim against Governor Gianforte in his official capacity. (Doc. 21.) Lake County seeks contribution or indemnity from the Governor for any monetary damages it ultimately may have to pay to the plaintiffs. *Id.*, ¶¶ 6-7; Prayer, ¶ 4. As such, Lake County's cross-claim is clearly barred by the Eleventh Amendment. *See Oneida County, N.Y. v. Oneida Indian Nation of N.Y. State*, 470 U.S. 226, 252-53 (1985) (holding that Eleventh Amendment barred county's cross-claim against state for indemnity); *Harris v. Angelina County, Tex.*, 31 F.3d 331, 337-40 (5th Cir. 1994) (county's third-party claim against state agency for contribution is barred by Eleventh Amendment).

Lake County's cross-claim for contribution and indemnity is also legally deficient as a matter of law. The remedies of contribution and indemnity are mutually exclusive. *State Farm Fire and Cas. Co. v. Bush Hog, LLC*, 219 P.3d 1249, 1252 (Mont. 2009). In Montana, the right to contribution is established by statute and applies to negligence actions. *Id.*; *see also* Mont. Code Ann. § 27-1-703. A claim for contribution has no application to Plaintiffs' claims based on alleged constitutional violations.

"Indemnity is an all-or-nothing proposition" and "shifts the entire loss" from one party to another. *Bush Hog*, 219 P.3d at 1252. Thus, indemnity claims are generally prohibited between or among alleged joint tortfeasors. *See Metro Aviation, Inc. v. U.S.*, 305 P.3d 832, 837 (Mont. 2013). Based on the allegations of Plaintiffs' Complaint, Lake County's indemnity claim thus fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, the Governor respectfully requests that his Motion to Dismiss be granted in its entirety and the Governor be dismissed as a Defendant in this matter.

DATED this 8th day of September, 2022.

CROWLEY FLECK PLLP

By  /s/ *Leonard H. Smith*
    Leonard H. Smith
    Mac Morris

*Attorneys for Defendant
Governor Greg Gianforte*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 7.1(d)(2) of the District of Montana Local Rules, I certify that this brief contains 3,325 words, excluding caption and certificate of compliance, is printed in 14-point font, and is double spaced, except for footnotes and indented quotations.

By  /s/ Leonard H. Smith
Leonard H. Smith
