IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| IN RE: CONDITIONS AT LAKE COUNTY JAIL | CV 22–127–M–DWM<br><br>OPINION<br>and ORDER |

Pending before the Court is Plaintiffs' Motion to Certify a Class. (Doc. 9.)

Defendants Lake County and Governor Greg Gianforte both filed briefs in

opposition. (Docs. 20, 29.) For the reasons described below, the motion will be

granted, but Plaintiffs' proposed class definitions will be modified.

## BACKGROUND

This action was originally filed on September 3, 2021, by five inmates at

Lake County Jail in Polson, Montana, including Aloysius Blackcrow.[1] (CV 21-97-

M-DWM, Doc. 2.) As is usual when multiple inmates file a joint, unrepresented

complaint, the cases were severed and each plaintiff directed to file an individual

complaint. While initial screening of the pro se complaints under 28 U.S.C. §§ 1915

and 1915A determined that they failed to state claims, for various reasons, each

---

[1] In his pro se filings, Blackcrow has always spelled his name as one word, which is also how his name appears on his current listing with Montana State Prison. The parties spell it as either Blackcrow or Black Crow. Unless corrected by the Plaintiff, the Court will continue to spell his name Blackcrow.

plaintiff was allowed to amend. Most of the original plaintiffs filed amended complaints, and other inmates at Lake County Jail began to file similar or related complaints.

On January 10, 2022, the various cases were all reassigned to the undersigned. A few days later, the cases were consolidated and Tim Bechtold appointed as counsel for the group. Additional complaints were filed by current inmates of Lake County Jail, inmates of other jails who had been at Lake County Jail, and people who were no longer incarcerated. Plaintiffs were directed to file an amended consolidated complaint, which they did on March 28, 2022. (Doc. 2.) Plaintiffs then filed a First Amended Class Action Complaint on July 19, 2022. (Doc. 8.) As of October 3, 2022, there are 54 Complaints filed in the consolidated action. A preliminary pretrial conference was held on July 14, 2022. An order establishing the master docket followed. (Doc. 1.)

Plaintiffs' First Amended Complaint includes four claims related to conditions of confinement at the Lake County Jail and presents two classes for certification: a Conditions Class and a Tribal Members Subclass. (Doc. 8 at 13–15.) Count 1, on behalf of the Conditions Class against Lake County, and the Tribal Members Subclass against all Defendants, alleges that Lake County and Governor Greg Gianforte, acting as the State of Montana, have deprived Plaintiffs of their Sixth, Eighth, and Fourteenth Amendment rights. *(Id.* at 13.) The rights specifically

mentioned, but without limitation, are rights to due process and equal protection, to be free of cruel and unusual punishment, and of access to the courts. (*Id.* at 13–14.)

Count 2 alleges that Lake County violated the First and Fourteenth Amendment rights of all plaintiffs related to the free exercise of religion and equal protection. (*Id.* at 14.)

Count 3 alleges, on behalf of the Confederated Salish and Kootenai Tribes ("CSKT") Tribal Members Subclass, that Defendants have deprived these plaintiffs of the "right to adequate and cost-free medical care secured to them through the Hellgate Treaty of 1855." (*Id.* at 14.)

Count 4 alleges Defendant Lake County has violated various Montana state law provisions, including Montana Constitutional rights, the Montana Religious Freedom Restoration Act, and statutes related to the operation and maintenance of jails. (*Id.* at 15.)

Plaintiffs seek declaratory and injunctive relief on all claims, and monetary damages for the Tribal Members Subclass for medical costs. (*Id.* at 16–17.)

Defendant Lake County filed its Answer on August 18, 2022. (Doc. 21.) Lake County's Answer includes a crossclaim against Defendant Governor Gianforte, asserting that he is responsible for the ultimate funding and administration of the State's Public Law 280 ("P.L. 280") obligations, and therefore, the jail. (Doc. 21 at 15.)

3

Defendant Gianforte filed a motion to dismiss on September 8, 2022. (Doc. 27.) Gianforte also responded to the motion for class certification, focusing only on the Tribal Members Subclass, because those are the only claims on which he is a named Defendant. (Doc. 29.)

Oral argument on the motion for certification was held on September 13, 2022. No witnesses or evidence was presented at that hearing.

## ANALYSIS

Plaintiffs seeking class certification must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). A plaintiff must first satisfy the four requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) ("Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of 23(a) have been satisfied.") (quotation marks omitted). Then, Plaintiffs must also satisfy the requirements of at least one of the categories of Rule 23(b). *Wang*, 737 F.3d at 542; *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Rule 23 "does not set forth a mere pleading standard[;]" rather, a plaintiff must "affirmatively demonstrate" that the rule's requirements are met. *Dukes*, 564 U.S. at 350. To wit, the allegations in Plaintiffs' pleadingst are not accepted as true;

Plaintiffs must prove Rule 23's requirements are "in fact" satisfied. *Id.* at 349; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011) (finding the district court applied "impermissible legal criteria" by accepting the allegations in the complaint as true, rather than "resolving the critical factual disputes" overlapping with the Rule 23(a) requirements).  A court cannot find the factors of Rule 23 to be satisfied without "significant proof[.]" *Ellis*, 657 F.3d at 983.

### A. Proposed Classes

Plaintiffs propose a class and a subclass. (Doc. 10 at 12.) Under Rule 23(c)(5), "a class may be divided into subclasses that are each treated as a class under the rule." "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

### 1. Conditions Class

Plaintiffs propose a class that includes "all persons who are, have been, or will be incarcerated at the Lake County Jail from September 3, 2018, through September 15, 2022." (Doc. 10 at 13.) September 3, 2018 marks the beginning of the three-year statute of limitations that governs 42 U.S.C. § 1983 actions in Montana, leading up to Plaintiffs' initial Complaint on September 3, 2021. The end date is the date the Court established at its preliminary pretrial conference for filing amended pleadings. The proposed class representatives are Aloysius Blackcrow,

James Elverud, Stoney Corcoran, Tyler Erickson, Marcus Azure, Nethanial Mad Plume, Samantha Ness, and Monica Greene. *(Id.)* Blackcrow, Elverud, Corcoran, and Erickson filed the original Complaint. The Conditions Class seeks only injunctive and declaratory relief.

### 2. Tribal Member Subclass

The Tribal Member Subclass contains all members of the Conditions Class who are also enrolled CSKT members, who are, have been, or will be incarcerated in Lake County Jail during the same time period. The proposed class representatives are Aloysius Blackcrow, Marcus Azure, and Nethanial Mad Plume. The Tribal Members Subclass seeks injunctive and declaratory relief, as well as monetary relief for their claims related to payment for medical services. *(Id.* at 15.)

### B. Rule 23(a)

Plaintiffs did not submit any evidence at oral argument to "affirmatively demonstrate" that the four requirements of Rule 23(a) are met or "in fact" satisfied. *Dukes*, 564 U.S. at 349–50. Rather, Plaintiffs relied on the initial complaints, affidavits, and grievances filed by the individual plaintiffs, and Defendant Lake County's response to Plaintiffs' First Discovery Requests.

In opposing class certification under Rule 23(a), Defendant Lake County focuses primarily on numerosity, insisting that a class action is not necessary because injunctive and declaratory relief will ultimately resolve all the conditions

concerns for all inmates.  But, Defendants argue both that Plaintiffs failed to

administratively exhaust their claims and that they lack standing because most are

no longer incarcerated at Lake County Jail.  The individual assessments

underpinning both of those arguments demonstrate the precise reason a class action

is being sought here: finding an individual inmate that has exhausted every

condition and remains in the custody of Lake County Jail is simply not feasible.

Accordingly, Defendants' general arguments about class certification lack merit and

Plaintiffs' Conditions Class meets the requirements of Rule 23(a).  The Tribal

Members Subclass, however, is more problematic.

### 1. Numerosity

The numerosity requirement is satisfied when the proposed class is so large

that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). An exact

number of members is not required to adequately plead numerosity; a reasonable

estimate is sufficient. *Burton v. Mtn. W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D.

599, 608 (D. Mont. 2003) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.

1993)). Here, Plaintiffs' proposed Conditions Class includes all inmates at Lake

County Jail over approximately four years, which they estimate to exceed 2400

inmates. This estimate is based on the publicly available numbers of current inmates

extrapolated over the four years they have proposed as the class term.  (Doc. 10 at

17–19.) Plaintiffs use a similar calculation to estimate that the Tribal Members Subclass amounts to approximately 1200 inmates. (*Id.* at 20.)

Gianforte takes an aggressive approach to the factual basis of Plaintiffs' numerosity arguments—regarding tribal members only—stating that the one-day census of those classified on the jail roster as "Indian" cannot establish the numerosity of the smaller group of (a) enrolled CSKT members who (b) sought medical care or were otherwise injured. (Doc. 29 at 14–18.) Gianforte asserts that tribal membership alone does not establish membership in the class—there must be some evidence of injury. *(Id.* at 17.)

In turn, Lake County insists that Plaintiffs cannot speculate as to the possible number of members in the class but rather must present evidence supporting their claim. Lake County raise two issues that it contends undermine the numerosity claim: failure to exhaust administrative remedies by unknown plaintiffs under the Prison Litigation Reform Act ("PLRA") and lack of standing.

### a. PLRA exhaustion

Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is therefore mandatory:

> [M]andatory exhaustion statutes like the PLRA establish mandatory
> exhaustion regimes, foreclosing judicial discretion. See, *e.g., McNeil v.
> United States,* 508 U.S. 106, 111, 113 [...] (1993) ("We are not free to
> rewrite the statutory text" when Congress has strictly "bar[red]
> claimants from bringing suit in federal court until they have exhausted
> their administrative remedies"). Time and again, this Court has taken
> such statutes at face value—refusing to add unwritten limits onto their
> rigorous textual requirements.

*Ross v. Blake*, 578 U.S. 632, 639 (2016); *see also Woodford v. Ngo*, 548 U.S. 81, 88

(2006).

Lake County asserts that this exhaustion requirement undermines Plaintiffs'

numerosity claim because of the consolidated plaintiffs, only 16 have completed the

written grievance procedure for any allegation, and none have completely grieved

all claims. (Doc. 20 at 20.) Additionally, only one tribal member—unidentified in

the briefs and at oral argument—has grieved the $10 health care payment issue.

Lake County and Gianforte both conclude that Plaintiffs cannot mathematically

deduce the number of potential plaintiffs because they would have to speculate

about whether those plaintiffs are entitled to proceed under the PLRA.

In response, Plaintiffs first advocate the adoption of the principle of

"vicarious exhaustion." Though not yet addressed in the Ninth Circuit, other circuits

have allowed vicarious exhaustion in prisoner class action suits, concluding that if

one plaintiff has sufficiently exhausted his or her administrative remedies, the

others are deemed to have done so as well. *Chandler v. Crosby*, 379 F.3d 1278,

1287 (11th Cir. 2004) ("We hold that a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through vicarious exhaustion, i.e., when one or more class members ha[s] exhausted his administrative remedies with respect to each claim raised by the class."); *Gates v. Cook*, 376 F.3d 323, 329-32 (5th Cir. 2004) (holding that one class member's exhaustion of administrative remedies was sufficient to satisfy PLRA's exhaustion requirement for the class of prisoners challenging conditions of confinement); *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C.Cir.2001) (explaining that so long as one member of the prisoner class pursued the available administrative remedies, "the plaintiff class has met the filing prerequisite"); *Thomas v. Schwarzenegger*, No. 2:07-CV-02310 ODW, 2011 WL 4501002, at *2 (E.D. Cal. Sept. 27, 2011), *on reconsideration*, No. 2:07-CV-02310 ODW, 2011 WL 4905632 (E.D. Cal. Oct. 14, 2011).  The rationale behind this approach is that the jail has been put on notice of the alleged harm and had the opportunity to remedy it, which is the main purpose of administrative exhaustion. *Chandler*, 379 F.3d at 1287; *see Woodford*, 548 U.S. at 89 ("Exhaustion gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is hauled into federal court, and it discourages disregard of [the agency's] procedures." (quotation marks omitted)).

Second, Plaintiffs also dispute whether exhaustion even bears on numerosity. (Doc. 26 at 7.) According to Plaintiffs, exhaustion is an affirmative defense on which Lake County bears the burden of proof and because Lake County has failed to identify the plaintiffs who have not exhausted their remedies, the issue is premature. (*Id.* at 10.)

Plaintiffs are correct, generally, regarding vicarious exhaustion. If they can establish that their claims have been exhausted by one of the named plaintiffs, the putative class can be deemed to have exhausted. However, their suggestion that PRLA exhaustion is entirely irrelevant goes too far. While it is true that exhaustion is properly raised on summary judgment by a defendant, the Court is not foreclosed from considering the issue at an earlier phase in the litigation: "[I]n those rare cases where a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). While the present motion is not one of dismissal, the class certification analysis occasionally must touch on the merits of the case. *See Dukes*, 564 U.S. at 350–51 (explaining that the "rigorous analysis" under Rule 23 "will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."). Further, the Court's screening obligations under 28 U.S.C. § 1915A require it to dismiss, without motion, any

portion of a complaint that fails to state a claim. This obligation necessitates scrutiny of flaws that are apparent at the time of filing.

Though Plaintiffs are correct that the burden of proving failure to exhaust resides with Defendants, once a defendant has demonstrated failure to exhaust, the plaintiff must bring forth some explanation for that failure. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). Plaintiffs contend that the initial filings of the original complaints demonstrate that those plaintiffs had exhausted their administrative remedies. Though Plaintiffs' counsel did not cite these affidavits and grievances or specifically identify them in the record, the initial plaintiffs, as of their original complaints, had sufficiently grieved the issue of general conditions of confinement at Lake County Jail. In particular, Plaintiff Tyler Erickson filed several grievances addressing various issues including crowding, unsanitary conditions, legal access, being forced to listen to a Christian pastor, and being charged to see the doctor. (CV 21-97-M-DWM Doc. 2-2, at 13 *et seq.*) Aloysisus Blackcrow had grieved, generally, the failure of Lake County Jail to abide with the corrections of conditions required by the *Lozeau v. Lake County* consent decree. (*Id.* at 7.)

Plaintiffs therefore meet the numerosity prong for their proposed Conditions Class. As this Court previously stated in *Chief Goes Out v. Missoula County*, "A court must rely on simple common sense when determining whether a class size meets the numerosity requirement. Common sense dictates that, in light of the

12

Detention Facility's 'fluid composition' and the certainty of future inmates who meet the class and subclass definitions, the class satisfies the numerosity requirement." No. CV 12-155-M-DWM, 2013 WL 139938, at *4 (D. Mont. Jan. 10, 2013) (citation omitted). The same principle applies here. Even limiting the evidence to the number of inmates on the hearing date, there are likely 50 inmates in Lake County Jail and that fluid number satisfies the numerosity requirement.

Plaintiffs have not, however, established that the Tribal Members Subclass meets the numerosity prong. First, Plaintiffs have not established that any tribal member exhausted this claim prior to the filing of the initial lawsuit. A review of the filings relied upon by Plaintiffs reveals no such grievance. Tyler Erickson, an individual not identified by the jail roster as Indian, grieved a related issue, claiming that no inmate should pay for medical care who either had personal insurance, or was a Department of Corrections inmate, relying explicitly on Mont. Code Ann. § 7-32-2224. (CV 21-97-M-DWM Doc. 2-2 at 34.) Commander Joel Shearer specifically responded to this statutory grievance. (CV 21-122-M-DWM, Doc. 8-1 at 25.) Accordingly, Plaintiffs have not established that an inmate has exhausted the administrative grievance process regarding whether enrolled members of the CSKT should be required to pay for medical care under the Hellgate Treaty.

Nethanial Mad Plume is identified as a class representative on this claim, and he did grieve the fact of Indians have to pay for medical care instead of using the

Indian Health Service, but only months after the original Complaint was filed. (CV 22-4-M-DWM, Doc. 2-1 at 1.) He may be the single mysterious plaintiff who did so, referred to in the briefs and at oral argument by the parties. However, Plaintiffs have failed to provide evidence that establishes that the number of CSKT tribal members who were injured by the medical payment requirement is greater than one, assuming Mad Plume is that one. Gianforte's factual arguments have merit; that is, just because someone identified by Lake County as "Indian" was in the jail at some point does not mean that the person is either an enrolled member of CSKT who is entitled to the benefits of the Hellgate Treaty, or suffered the alleged injury of being forced to pay for medical care. Plaintiffs produced no evidence to establish the CSKT tribal membership of any plaintiff, including any of the named tribal member plaintiffs. Nor have they submitted records of medical care payments or invoices. Accordingly, Plaintiffs have not carried their burden to establish that there is a subclass of CSKT tribal members who exhausted their claims and were charged a fee to seek medical care that is so numerous as to require certification as a class.

Nevertheless, these initial findings on exhaustion are not dispositive of Plaintiffs' claims on this point. Rule 23 allows the Court to amend its certification order anytime "before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Further, the Court reaches no conclusion about Plaintiffs' exhaustion as required by the PLRA;

Plaintiffs have simply failed to carry their burden on a certification motion at this point to establish there are sufficient plaintiffs in the Tribal Member Subclass.[2]

### b. Standing/Mootness

As of the filing of Lake County's response brief, only eight of the consolidated plaintiffs were still at Lake County Jail. (Doc. 20 at 21.) The number is lower now, as Plaintiffs claim in their reply that one named plaintiff is left. (Doc. 26 at 11.) Defendants contend that putative class members who are no longer at Lake County Jail lack standing to pursue injunctive relief. "To have standing to assert a claim for prospective injunctive relief, a plaintiff must demonstrate 'that he is realistically threatened by a repetition of [the violation].'" *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012) (alteration in original) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)). Though some of these inmates might find themselves in Lake County Jail again in the future, "standing is inappropriate where the future injury could be inflicted only in the event of future illegal conduct by the plaintiff." *Armstrong v. Davis*, 275 F.3d 849, 865 (9th Cir. 2001), *overruled on other grounds*

---

[2] A related numerosity issue not raised by the parties is the status of Plaintiffs' Count II. Plaintiffs have not discussed their religion claims in the context of class certification. Plaintiff Erickson's initial grievances related to religion were because he was forced to listen to a Christian preacher and did not want to. (CV 21-122-M-DWM, Doc. 8-1 at 9.) He does not mention requesting Native American religious services. Plaintiffs have failed to prove—let alone proffer—any class or subclass regarding this claim beyond what may fall under the broader category of the "conditions" claim.

by *Johnson v. California*, 543 U.S. 499 (2005); *see also Hodgers–Durgin v. De La Vina,* 199 F.3d 1037, 1041 (9th Cir.1999) (en banc) (no standing where injury "contingent upon respondents; violating the law, getting caught, and being convicted").

Generally speaking, injunctive relief is not available to an inmate who is no longer incarcerated at the facility he seeks to enjoin. *See Preiser v. Newkirk*, 422 U.S. 395, 402–03 (1975); *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007). The same goes for declaratory relief. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985) (en banc) (per curiam); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *Confederated Salish & Kootenai Tribes v. Jewell*, No. CV 14-44-M-DLC, 2015 WL 12748309, at *7 (D. Mont. May 18, 2015) ("The Declaratory Judgment Act's standing requirement is met when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

However, Plaintiffs respond, correctly, that if a putative class member had standing at the time the Complaint was filed, his departure from the jail does not moot his claim. In *Gerstein v. Pugh*, the Supreme Court noted with respect to class action claims brought by pretrial detainees that "pretrial detention is by nature temporary" and could be "ended at any time by release on recognizance, dismissal of the charges, or a guilty plea, as well as by acquittal or conviction after trial," making it "by no means certain that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." 420 U.S. 103, 110 n.11 (1975). As such, these claims fit the standing exception for claims "capable of repetition, yet evading review." "Moreover, in this case the constant existence of a class of persons suffering the deprivation is certain." *Id.*

In any event, there is at least one class representative still at Lake County Jail. As of October 3, 2022, Tyler Erickson, one of the original plaintiffs who had grieved his conditions allegations, is held at Lake County Jail.[3] As such, the mootness of past inmates' claims for injunctive relief does not preclude a class of current and future inmates at Lake County, which would certainly meet the numerosity requirement.

However, Plaintiffs' proposed Conditions Class definition relying on *past* inmates, within the statute of limitations, is not cognizable. As to any inmates who

---

[3] Lake County's jail roster is publicly available at www.lakemt.gov.

were released prior to the filing of Blackcrow original Complaint, their claims are not justiciable. Awarding them injunctive or declaratory relief would do nothing to resolve any live controversy between them and Lake County Jail, and they did not have a pending claim prior to their release. Therefore, based on lack of standing, the Conditions Class will be modified to include only current and future inmates of Lake County (as of the date of Blackcrow's filing.)

The Supreme Court considered this issue in *Dukes*, wherein it concluded that former employees could not be members of a class seeking injunctive relief, since the relief would not benefit them. 564 U.S. at 364 ("The Ninth Circuit recognized the necessity for this when it concluded that those plaintiffs no longer employed by Wal–Mart lack standing to seek injunctive or declaratory relief against its employment practices."); *see also Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (recognizing that former employees lack standing to seek injunctive relief because they "would not stand to benefit from an injunction requiring the anti-discriminatory policies [to cease] at [their] former place of work"); *Am. Civil Liberties Union of Nev. v. Lomax*, 471 F.3d 1010, 1015 (9th Cir.2006) (stating that when evaluating whether standing is present, a court must look at the facts as they exist at the time the complaint was filed).

Further, allowing plaintiffs who left Lake County prior to Blackcrow's Complaint undermines the fiction of "vicarious exhaustion." Inmates following

Blackcrow may rely on his exhaustion as providing notice to Lake County, but there is no reason to believe (one way or the other) anything about any inmate before him or whether Lake County had notice of any particular claims. Accordingly, the Conditions Class is limited to inmates held at Lake County Jail since September 3, 2021, including current and future inmates. *See Parsons v. Ryan*, 754 F.3d 657, 676–77 (9th Cir. 2014).

### 2. Commonality, typicality, and adequacy of representation

Lake County does not specifically address any of the other requirements of Rule 23(a) in its brief, though at oral argument counsel implied that its overarching concerns regarding exhaustion and standing undermine these elements as well. Plaintiffs address these requirements extensively. (Doc. 10 at 20–26.) While Gianforte addressed each as to the Tribal Members Subclass, those arguments are considered below only to the extent they bear on the Conditions Class.

### a. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Gianforte, relying on *Dukes*, insists that shared jail conditions alone cannot satisfy commonality; there must be "the same injury" suffered by the plaintiffs. (Doc. 29 at 19.) However, conditions of confinement claims are amenable to class actions because the actions or inactions of defendants regarding Lake County Jail are generally applicable to all inmate plaintiffs. *Parsons*, 754 F.3d at 681–82. Gianforte

is correct that *Dukes* required that all of the potential employee plaintiffs must have suffered the same type and cause of discrimination. But the context is different in a jail—whether it is mold, or overcrowding, or poor food—where the facts of the conditions and the law of whether they are adequate apply equally to all. Each inmate might have a slightly different concern on a different day, but they are all subject to living in the same conditions and suffering the same harms.  As clarified in *Parsons*, several courts have recognized "that many inmates can simultaneously be endangered by a single policy," such as unsafe drinking water, heat exposure, asbestos, and substandard fire prevention. 754 F.3d at 678. The questions of law and fact related to whether the conditions at Lake County Jail are constitutional will be answered for all plaintiffs by injunctive relief for a class.

Gianforte would have the Court evaluate "the details of each inmate's experience at the jail," which is exactly the burden that a class action seeks to alleviate. (Doc. 29 at 20.) "[A]lthough a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury when he is exposed to a single . . . practice that creates a substantial risk of serious harm." *Parsons*, 754 F.3d at 678. "A person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC*

*v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). Plaintiffs' Conditions Class meets the commonality requirement.

### b. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality exists "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong*, 275 F.3d at 868 (citations omitted). Typicality and commonality "tend to merge." *Dukes*, 564 U.S. at 349, n.5. For the reasons stated above related to common conditions of incarceration, Plaintiffs' Conditions Class satisfies Rule 23(a)(3).

### c. Adequacy

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This Court has previously construed this inquiry as containing two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Chief Goes Out*, 2013 WL 139938, at *6–7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Gianforte argues that Plaintiffs have provided no facts to support their assertions that there are no conflicts and that counsel will prosecute the action vigorously. (Doc. 29 at 24.) However, given that injunctive relief will redound to the benefit of all members of the Conditions Class, the Court is convinced the representatives will adequately represent the class. Further, based on the Court's experience with counsel, the Court concludes the adequacy prong is met.

### 3.     Conclusion

Based on the above, the Conditions Class, with modification, satisfies the four requirements of Rule 23(a).

### C. Rule 23(b)

Plaintiffs' proposed class must also satisfy one of the three subsections of Rule 23(b). Plaintiffs assert that their claims should be certified under Rule 23(b)(2), with the Tribal Members' claim for monetary relief certified under Rule 23(b)(3). (Doc. 10 at 27–28.) Because Plaintiffs failed to meet the requirements of Rule 23(a) for the Tribal Members Subclass as discussed above, that class is not considered in the Rule 23(b) analysis below.  As it relates to the Conditions Class, Lake County does not dispute the applicability of Rule 23(b)(2).

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

"Rule 23(b)(2) applies when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 338; *see also Rodriguez v. Hayes*, 591 F.3d 1105, 1125 (9th Cir. 2010) (explaining that a party can satisfy Rule 23(b)(2) if "class members complain of a pattern or practice that is generally applicable to the class as a whole"). Class certification is not appropriate under Rule 23(b)(2), however, "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 360. The conduct challenged by a Rule 23(b)(2) action need not cause damage to each class member. Put differently, "[t]he fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)." *Rodriguez*, 591 F.3d at 1125.

Plaintiffs correctly assert that Rule 23(b)(2) is a common ground for certification of classes in prison litigation, as the conditions of confinement or restrictions of liberty or the like are frequently applicable to a group. (Doc. 10 at 28); *see, e.g.*, *Parsons*, 754 F.3d at 687. Certification of a general Conditions Class seeking injunctive relief under this section is therefore appropriate.

## CONCLUSION

The Conditions Class, as modified by the Court, satisfies the four

requirements of Rule 23(a) and meets the requirements of Rule 23(b)(2). The Court

therefore certifies the proposed class as defined below.

IT IS ORDERED that Plaintiffs' motion for class certification (Doc. 9) is

GRANTED IN PART and DENIED IN PART. (Doc. 9.) The Court CERTIFIES the

following Conditions Class as to Counts I, II, and IV:[4]

> All persons incarcerated at Lake County Jail as of September 3, 2021 to the
> present, as well as all current and future inmates.

IT IS FURTHER ORDERED that Timothy M. Bechtold, Constance Van

Kley, and Rylee K. Sommers-Flanagan are appointed as class counsel. Fed. R. Civ.

P. 23(g)(1)(B), (C).

IT IS FURTHER ORDERED that on or before October 21, 2022, Plaintiffs

must submit a notice outlining their proposal for class notification. *See* Fed. R. Civ.

P 23(d)(1)(B).

Dated this 11ᵗʰ day of October, 2022.

Donald W. Molloy, District Judge
United States District Court

---

[4] The Count II certification is limited as discussed in note 2, *supra*.